**PACIFIC CLAY PRODUCTS, a corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. California,
Central Division.
Oct. 20, 1961.

Co., 2 Cir., 286 F.2d 488; Ford v. Magee, 2 Cir., 160 F.2d 457; In re Wire Corporation, D.C., 131 F.Supp. 586.

3. 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870.

Parker, Milliken & Kohlmeier, Harrison Harkins, Los Angeles, Cal., for plaintiff.

Herbert Awe, Tax Div., Dept. of Justice, Washington, D. C. Francis C. Whelan, U. S. Atty., Robert H. Wyshak, Eugene N. Sherman, Asst. U. S. Attys., Los Angeles, Cal., for defendant.

HOLLAND, District Judge.

This case was originally heard in October of 1958 (October 7th to 10th and 13th to 17th, both inclusive) before the undersigned, sitting in Los Angeles, California, in the United States District Court for the Southern District of California, Central Division. And the original judgment in the cause was filed and entered on October 30, 1958.

The defendant appealed, and the plaintiff cross-appealed, from the original judgment to the United States Court of Appeals for the Ninth Circuit, which promulgated its decision on November 29, 1960 (United States of America v. Pacific Clay Products, Docket No. 16404, 285 F.2d 215 (1960)). The appellate court reversed the judgment on appeal and remanded the case with directions, and the court reversed the judgment on the cross-appeal for further proceedings in accordance with its opinion.

Proceedings on the remand were heard by the undersigned, sitting in Los Angeles, California, and remand proceedings were conducted in accordance with the plan of procedure announced by the undersigned in court on October 10, 1961.

In the remand proceedings the plaintiff was represented by its attorney, Harrison Harkins, of Parker, Milliken, Kohlmeier & Clark, Los Angeles, California, and defendant was represented by its attorneys, Herbert Awe, Tax Division, Department of Justice, Washington, D. C., and Francis C. Whelan, United States Attorney and Eugene N. Sherman, Assistant United States Attorney, both of Los Angeles, California.

The case on remand was submitted on the basis of the following: (a) the entire record made during the original October, 1958 proceedings; (b) the additional evidence presented in court on October 13, 1961, namely, plaintiff's Exhibit No. 16 and defendant's Exhibits Nos. A–1, B–1, and C–1; (c) proposed findings of fact and conclusions of law lodged with the court by each party; and (d) argument by each party. And the court, having duly considered all of the foregoing, and being fully advised in the premises, makes and concludes the following Findings of Fact and Conclusions of Law, as hereinafter set out.

Subsequent to the date of this court's decision, the case of U. S. v. Cannelton, 364 U.S. 76, 80 S.Ct. 1581, 4 L.Ed. 1581 was decided. Subsequent to that date the decision of the Ninth Circuit reversed and remanded this case as hereinbefore stated. In September, 1961, Congress passed Public Law No. 87–312, 87th Congress, 1st Session, 75 Stat. 674. The plaintiff has announced that it intends to elect under that Act.

The plaintiff mines and manufactures clay products. The holding in the Cannelton case, as applied to the issues of this case, would render it necessary to distinguish between the plaintiff's activities as a miner and its activities as a manufacturer of clay products, had there been no Act of Congress as above mentioned and the plaintiff's election thereunder.

In the former decision of the District Court too much emphasis was given to the PCE test. It is now realized by the court that this PCE test must be regarded, as it is, as being a part of the factors considered by the Society for the testing of materials, in determining the qualifications of the clays in question under the fire clay definition published by

the American Society for testing materials.

The pyrometric cone equivalent (PCE) of plaintiff's ten clay deposits is as follows:

| Deposit | Cone |
|---------|------|
| South Pit | 32 |
| Dosch | 32 |
| Lower Douglas | 19–20 |
| Pacific Red | 19 |
| Harrington Red | 16–17 |
| Murphy | 16 |
| Upper Douglas | 16 |
| Valley Springs | 16– |
| Los Nietos | –4 |
| Irvine | –4 |

The pyrometric cone equivalent is a measure of refractoriness, that is, the material's ability to withstand high temperature. Having further considered the evidence in the case, and giving due consideration to the fire clay definition published by the American Society for the testing of materials, the court does not now base its conclusion on a hard and fast rule separating the cone test as between (a) cone 19 and above and (b) those below cone 19, but it considers the PCE test as a factor in and in connection with the ASTM definition of a fire clay.

I now proceed to discuss the distinction between fire clay and non-fire clay in the light of the ASTM definition of fire clay. The elements of silica and aluminum oxide are essentially in the 15% depletable clays, and not only that but they must possess suitable refractoriness for use in commercial refractory products. In producing a fire brick the plaintiff may well and does mix the 15% clay with another clay, a 5% depletable clay of the brick or tile grade, in order to satisfactorily produce a fire brick, but the 15% clay must possess all the attributes as above set forth to a higher degree, while the 5% brick or tile clay, goes into the mix to produce the fire brick, as brick or tile 5% clay, alone and of its own character, does not measure up, in degree of refractoriness, to the grade of fire clay. Such 5% depletable clay does not have the capacity to resist high temperature, required in fire clay.

The plaintiff's manufactured products result from a mixing or combining of various clays. This is usual in the manufacturing of clay products. This mixing of the clays, or compounding, creates a background, which in my judgment, causes confusion among individuals who are called upon to express an opinion as to whether a specific clay is a fire clay or on the other hand a brick or tile clay. Consider a person engaged in the manufacture of a fire clay product, whether he be an executive of a manufacturing concern, or whether he is a worker in such manufacturing plant, and if he is not a scientific or technical person, he is apt to emphasize the fact that the specific clay is actually used in the making of the finished product. The technical person, the man learned in the field of ceramics, is better able to fasten his view to the specific clay alone about which he is called upon to express an opinion. It leaves the court the burden of considering all the opinions expressed in the case, and, under the evidence, and applying the proper test, to at last say what grade of depletion these specific clays should take, considering that the clay as an individual clay, though when in production of products it is mixed with other clays.

A reference to Kaolin, which is about the most perfect clay known to the trade, is deemed pertinent. All the elements of Kaolin are within the term "hydrous silicates of aluminum". The chemical formula for Kaolin is given by Webster's dictionary as $H_4 Al_2 Si_2 O_9$. Plaintiff's "Dosch" clay illustrates the significance of the presence of a high degree of silica and aluminum oxide. "Dosch" has been stipulated between the parties as a 15% depletion clay. Another element, important in the clays in question, is iron oxide, its presence or absence in small quantities affecting the color of the finished product. "Dosch" has a small percentage of iron oxide, to wit, 1.56%. In contrast to Murphy, for instance,

which has a large percentage, to wit, 7% of iron oxide. Murphy as hereunder found is a 5% depletion clay.

The definition of "fire clay" as established by ASTM is:

"An earthy or stony mineral aggregate which has the essential constituent hydrous silicates of aluminum, with or without free silica, plastic when sufficiently pulverized and wetted, rigid when subsequently dried, and of suitable refractoriness for use in commercial refractory products."

█ I think that it is helpful to paraphrase some of the words and thoughts expressed in the ASTM definition of fire clay. There are two parts to the definition, the first part can well be separated as ending with the words "subsequently dried", leaving the latter part of the definition as embracing the words "of suitable refractoriness for use in commercial refractory products". Paraphrasing this latter part of the definition, I think it properly reads as: "of such suitable capacity to resist (high temperature) for use in commercial products, which, as such, resist ordinary treatment, such as breaking or being damaged by the hazards of heat and ordinary use". It is my construction of the definition that the first portion of the definition should be interpreted as I have heretofore noted. I do not approve of an interpretation, when applied to the clays in question, that all six clays are fire clays, from the fact alone of their possessing the mentioned constituent elements. However, even though all six clays in question, because of their constituent elements, should be accepted as fire clays, I am of the opinion that the first part of the definition embraces the fundamental thought that the degree of percentage is to be considered. Hence, I am of the opinion that the first portion of the definition properly interpreted is that fire clays must possess the constituent elements to a high degree, but a brick or tile clay may possess such constituent elements to a lower degree.

Each clay is to be considered alone or singly in applying the PCE test and the ASTM test. While it is true that all six of the clays in question contain the essential elements of hydrous silicates and aluminum, each such clay must separately and alone have sufficient heat resistance and must have the elements set forth in the definition, in order to measure up to the definition of fire clay. It is a matter of degree of essential element content. The fire clay must, in my opinion, have a *high* degree of constituent elements, which, when mixed with other non-fire clays, *can produce* a fire brick which is a refractory product, but a brick or tile clay, though possessing some of the essential elements in degree, *cannot produce* a fire brick, a refractory product, *unless* it is mixed with the fire clay which does possess in higher degree the described constituent elements.

### Findings of Fact

#### I

This is a civil action for the recovery of internal revenue taxes, namely, corporation income taxes paid by plaintiff for the calendar years 1951 and 1952; and jurisdiction over the action is conferred on the court by Section 1346, as amended, of Title 28 United States Code.

#### II

Plaintiff is a California corporation with its place of residence and principal place of business within the Judicial District and Division of the court.

#### III

The court finds as facts, and by this reference incorporates herein as findings of fact, all of the facts stipulated by the parties, and all facts admitted by the pleadings and in the pretrial order.

#### IV

All conditions precedent to the commencement of this action were duly complied with by plaintiff; and this action was commenced within the time prescribed by law.

## V

Plaintiff keeps its books of account, and prepared and filed its income tax return, on the basis of a calendar tax year and on the accrual method of accounting.

## VI

With respect to its calendar tax year 1951, plaintiff paid the following amounts of tax and interest on the dates stated:

| Date Paid | Amount | Description |
|---|---|---|
| March 17, 1952 | $ 74,900.00 | Tax Installment |
| June 16, 1952 | 200,000.00 | Tax Installment |
| September 15, 1952 | 27,668.23 | Tax Installment |
| December 15, 1952 | 53,394.39 | Tax Installment |
| August 14, 1952 | 745.30 | Interest |
| November 26, 1954 | 15,021.80 | Tax Deficiency |
| November 26, 1954 | 2,403.49 | Interest |

## VII

With respect to its calendar tax year 1952, plaintiff paid the following amounts of tax and interest on the dates stated:

| Date Paid | Amount | Description |
|---|---|---|
| March 14, 1953 | $128,000.00 | Tax Installment |
| June 23, 1953 | 128,000.00 | Tax Installment |
| December 15, 1953 | 24,025.78 | Tax Installment |
| January 14, 1955 | 32,050.01 | Tax Deficiency |
| January 14, 1955 | 3,523.31 | Interest |

## VIII

On its 1951 return, plaintiff claimed a deduction for the depletion of clay deposits, owned or leased by it, in the amount of $79,622.84, of which defendant, upon audit, allowed $50,023.22 and disallowed $29,599.62. Defendant computed the plaintiff's "net income as corrected" to be $747,450.66 for the year 1951.

## IX

On its 1952 return, plaintiff claimed a deduction for the depletion of clay deposits, owned or leased by it, in the amount of $105,459.70, of which defendant, upon audit, allowed $64,527.52 and disallowed $40,932.18. Defendant computed the plaintiff's "net income as corrected" to be $671,274.37 for the year 1952.

## X

At all times material to this cause, plaintiff was engaged in the business of mining fire clays and brick and tile clays from natural deposits of clays owned or leased by it in California; and in processing for sale clay products obtained from said clays, in plants owned and operated by plaintiff in California.

## XI

Said clays were used by plaintiff in the manufacture of building or paving brick, drainage and roofing tile, sewer pipe, and kindred products; and its principal product was sewer pipe.

## XII

With the exception of some sales of Dosch clay, processed and sold as ground fire clay (1.287.55 short tons in 1951 and 387.5 short tons in 1952) none of the fire

clays and brick and tile clays mined by plaintiff were sold prior to being processed into the form of burnt clay products.

### XIII

The descriptive names of the clays owned and leased by plaintiff, and the number of short tons of said clays mined and processed by it in 1951 and 1952 are as follows:

|  | Short | Tons |
|---|---|---|
|  | 1951 | 1952 |
| Owned Clays: |  |  |
| Murphy | 14,009 | 18,147 |
| Valley Springs | 6,180 | 15,825 |
| South Pit | 1,379 | 2,578 |
| Dosch | 11,217 | 9,613 |
| Los Nietos | 28,172 | 38,159 |
| Lower Douglas | 798 | 2,509 |
| Leased Clays |  |  |
| Upper Douglas | 7,115 | 8,259 |
| Pacific Red | 14,035 | 17,888 |
| Irvine | 39 | 314 |
| Harrington Red | 0 | 286 |
| Totals | 82,944 | 113,578 |

### XIV

Plaintiff did not wrap, box, or otherwise package for shipment its clay products, except that it sacked the Dosch ground fire clay which it sold.

### XV

Plaintiff has committed itself to the court and to the defendant that plaintiff will duly exercise the election provided for in Public Law No. 87–312 (September 26, 1961) 87th Congress, 1st Session, 75 Stat. 674.

### XVI

The parties are agreed that upon the Court's determination of the issues, the parties will submit a computation or computations, pursuant to the Court's determination, showing the corrected amounts of tax and interest overpayments, if any, to be entered in the judgment in the action.

### XVII

The parties have stipulated and the Court finds, the following:

(a) The clays designated as Dosch and South Pit (red and white), are "fire clays", depletable at the rate of 15%, within the meaning of Section 114(b) (4) (A) (iii) of the Internal Revenue Code of 1939, as amended (hereinafter sometimes called the "1939 Code"), 26 U.S.C. A. § 114(b) (4) (A) (iii).

(b) The clays designated as Los Nietos and Irvine are "brick and tile clay", depletable at the rate of 5%, within the meaning of Section 114(b) (4) (A) (i) of the 1939 Code.

### XVIII

■ The Court concludes that under the evidence and applying the test of the PCE cone and the definition adopted by the ASTM that the Lower Douglas, Pacific Red, and the Upper Douglas are depletable at the rate of 15% as fire clay, and that Murphy, Valley Springs and Harrington Red are depletable at the rate of 5%.

### XIX

To the extent that anything hereinafter stated as a conclusion of law is deemed to be a fact, it is hereby found as a fact and incorporated as a finding of facts by this reference.

### Conclusions of Law

#### I

This Court has jurisdiction of the parties and subject matter of this action.

#### II

The Internal Revenue Code of 1939, as amended (hereinafter sometimes called the "1939 Code") is applicable to the calendar tax years 1951 and 1952, which are involved in this case; and under the 1939 Code percentage depletion for natural deposits of clay is to be computed as provided in Section 114(b) (4) and 23(m) of said Code, 26 U.S.C.A. §§ 23(m), 114(b) (4).

#### III

Public Law No. 87–312 (September 26, 1961), 87th Congress, 1st Session, 75 Stat. 674 provides that in the case of brick and tile clay, fire clay, or shale used

by a mine owner or operator in the manufacture of building or paving brick, drainage and roofing tile, sewer pipe, flower pots, and kindred products, an election can be made by the taxpayer to apply the provisions of the Public Law in the computation of percentage depletion of the clay or shale for specified past open years.

## IV

Plaintiff is qualified to make the election under Public Law No. 87–312; and plaintiff's calendar tax years 1951 and 1952, which are involved in this case, are open for election, and will be covered by the election made by plaintiff under Public Law No. 87–312.

## V

Plaintiff's election under Public Law No. 87–312, will have the following effect, among other things, for the purposes of this case:

(1) The definition of "gross income from the property", as stated in subdivision (a) (1) of Public Law 87–312, will be substituted for the definition of "gross income from the property" stated in Section 114(b) (4) (B) of the 1939 Code.

(2) For the purposes of computing the "50 percentum of the net income" limitation stated in Section 114(b) (4) (A) of the 1939 Code, the limitation shall be computed as provided in subdivision (a) (2) of Public Law No. 87–312.

## VI

Under subdivision (a) (1) of Public Law 87–312, "gross income from the property" shall be 50% of the amount for which the manufactured clay products are sold during the taxable year, except that with respect to any manufactured product, "gross income from the property" shall not exceed an amount equal to $12.50 multiplied by the number of short tons used in the manufactured product sold.

## VII

Under subdivision (a) (2) of Public Law 87–312, for the purpose of computing the 50 percentum of net income limitation under Section 114(b) (4) (A) of the 1939 Code, net income from the property (computed without allowance for depletion) shall be an amount which is the same proportion of net income from manufactured products sold during the taxable year which "gross income from the property" is of the total amount for which the manufactured products are sold during the taxable year.

## VIII

The clay from plaintiff's deposits referred to as Lower Douglas and Pacific Red and Upper Douglas is "fire clay" within the meaning of Section 114(b) (4) (A) of the Internal Revenue Code of 1939, and plaintiff is entitled to a 15% depletion rate on the clay production from these deposits.

## IX

The clay from the Harrington Red, Murphy and Valley Springs deposits is not "refractory and fire clay" within the meaning of Section 114(b) (4) (A) of the Internal Revenue Code of 1939. The clay from these deposits is "brick and tile clay" within the meaning of Section 114(b) (4) (A) of the Code and plaintiff is entitled to a 5% depletion rate on the clay production from these deposits.

## X

To the extent that anything hereinabove stated as a finding of fact is deemed to be a conclusion of law, it is hereby concluded as a matter of law, and is incorporated as a conclusion of law by this reference.

## XI

This Court retains jurisdiction of this action until such time as judgment is entered herein.

## XII

Let judgment be prepared according to the within Findings of Fact and Conclusions of Law.